**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM C. BULLOCK, SR.,** | : | **Civil No. 1:12-CV-2266** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **INTERNAL REVENUE SERVICE,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

The plaintiff, William Bullock, has filed a 277 page *pro se* complaint with this Court seeking damages and other relief from the Internal Revenue Service and from four individual defendants employed by the IRS.  (Doc. 1)  Bullock's complaint is a voluminous recital reflecting his own idiosyncratic views regarding federal tax laws and liabilities, and represents the latest chapter in an on-going legal saga brought by Bullock against the IRS.

Thus, the instant case is not the first legal foray by Bullock endeavoring to defeat IRS tax levies.  Quite the contrary, in 2009 Bullock filed a civil action against

1

his employer, attempting to sue the employer for compliance with an IRS levy and wage garnishment. That prior lawsuit was dismissed by this Court, and the dismissal of that action was affirmed by the United States Court of Appeals for the Third Circuit in 2011. Bullock v. Bimbo Bakeries USA, Inc., 414 F.App'x 470 (3d Cir. 2011). More recently, Bullock filed a similar action, Bullock v. IRS, No. 1:12-CV-1061, which was summarily dismissed by this Court in July, 2012.

Undeterred by these prior adverse rulings, Bullock filed the instant lawsuit,[1] which now comes before the Court on two motions: a motion for entry of default judgment filed by Bullock (Doc. 14), and a motion to dismiss filed by the defendants. (Doc. 19) With respect to this motion to dismiss, we note that Bullock has not filed a response to the motion. As a *pro se* litigant the plaintiff was advised by this Court at this outset of this lawsuit of his responsibilities in this litigation. Thus, on November 14, 2012, the district court entered its Standing Practice Order in this case, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6

---

[1]Bullock paid the filing fee. Accordingly, his complaint was not subject to screening review.

provides that he or she shall be deemed not to oppose the moving party's motion. The motion may, therefore, be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 3, p.2)

In the absence of a timely response by Bullock to the motion to dismiss, that motion will be deemed ripe for resolution. For the reasons set forth below, it is recommended that Bullock's motion for entry of default be denied, since the defendants have responded to this complaint, and the defendants' motion to dismiss be granted.

## II.    Discussion

### A.    Bullock's Motion for Entry of Default Should Be Denied

At the outset, we recommend that the Court deny Bullock's motion for entry of default. Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55 a default judgment may only be entered when the party against whom the default judgment is sought was served and "has failed to plead or otherwise respond" Rule 55(a), F.R.Civ.P., and a "default judgment [cannot be] entered when there has been no proper service of the complaint . . . ." Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985). Furthermore, in ruling upon requests relating to default judgments it is well-settled that these decisions are:

[L]eft primarily to the discretion of the district court. <u>Tozer v. Charles A. Krause Milling Co.</u>, 189 F.2d 242, 244 (3d Cir.1951). We recognize, however, that this court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to [deny or] set aside the default judgment "so that cases may be decided on their merits." <u>Id</u>. at 245. <u>See also</u> <u>Gross v. Stereo Component Systems, Inc.</u>, 700 F.2d 120, 122 (3d Cir.1983); <u>Feliciano v. Reliant Tooling Company, Ltd.</u>, 691 F.2d 653, 656 (3d Cir.1982); <u>Farnese v. Bagnasco</u>, 687 F.2d 761, 764 (3d Cir.1982). Nevertheless, we do not [deny or] set aside the entry of default and default judgment unless we determine that the district court abused its discretion. We require the district court to consider the following factors in exercising its discretion . . . : (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. <u>Gross v. Stereo Component Systems, Inc.</u>, 700 F.2d at 122; <u>Feliciano v. Reliant Tooling Company, Ltd.,</u> 691 F.2d at 656; <u>Farnese v. Bagnasco</u>, 687 F.2d at 764.

<u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 194-95 (3d Cir. 1984)

In this case, we find that all of these discretionary factors favor denial of entry of default judgment against these defendants at this time. At the outset, allowing this matter to be resolved on its merits is a cardinal guiding principle in our legal system, and one which causes courts to view default judgments with disfavor. This principle applies with particular force here, since the plaintiff does not appear to be entitled to a judgment on the merits of his claims. Furthermore, the plaintiff is not unfairly prejudiced by denying a default judgment at this stage of the litigation. However, entry of default would be highly prejudicial to those defendant against whom Bullock

seeks this default judgment, and those defendants have not engaged in any culpable conduct which makes entry of default appropriate.

Finally, we note that, upon proper service of these pleadings, the defendants have responded by filing a motion to dismiss this action. This motion to dismiss has great merit, and in light of this response, it cannot be said that the defendants have defaulted upon their obligations as litigants. Therefore, entry of a default judgment would be entirely inappropriate.

**B.     The Defendants' Motion to Dismiss Should Be Granted**

Having determined that the entry of a default judgment would be inappropriate given the defendants' response to this complaint, the filing of a motion to dismiss, we further find that the defendants are entitled to dismissal of this complaint for the reasons set forth below.

**1.     Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion to dismiss, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since  Local Rule 7.6 of the

Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the plaintiff has not complied with the Local Rules, or this Court's Standing Practice Order, by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a

timely fashion ....” <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157
F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of
our legal system. A failure on our part to enforce compliance with the rules, and
impose the sanctions mandated by those rules when the rules are repeatedly breached,
“would actually violate the dual mandate which guides this Court and motivates our
system of justice: ‘that courts should strive to resolve cases on their merits whenever
possible [but that] justice also requires that the merits of a particular dispute be placed
before the court in a timely fashion’.” <u>Id.</u> Therefore, we are obliged to ensure that
one party’s refusal to comply with the rules does not lead to an unjustified prejudice
to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed
to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss.
These failures now compel us to apply the sanction called for under Rule 7.6 and
deem the plaintiff to not oppose this motion to dismiss.

## 2.     The Plaintiff’s Claims Fail on Their Merits

In any event Bullock’s claims fail on their merits. The defendants have moved
to dismiss this complain pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure, which provides that a complaint should be dismissed for “failure to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of</u>

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### (a). Bullock Has Failed to State a Claim Against the Individuals Named in His Complaint

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to

properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint).

In this case Bullock has named various IRS officials as defendants but has not alleged sufficient facts to give rise to liability against these officials. In considering claims brought against officials arising out of alleged constitutional violations, the courts recognize that agency supervisors may be exposed to liability only in certain, narrowly defined, circumstances. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was an agency supervisor when the incidents set forth in the complaint

occurred. Quite the contrary, to state a claim the plaintiff must show that the supervisory defendant actively deprived him of a right secured by the Constitution or laws of the United States. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and

approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, Bullock's complaint does little more than name various officials in the caption of the case, and then seek to hold that official personally liable based upon the official's status without making any specific factual allegations about these defendants in the body of this pleading. To the extent that Bullock simply premises the liability of the defendants upon their official status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this defendant. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

### (b). Sovereign Immunity Precludes a Lawsuit Against the United States

Furthermore, to the extent that Bullock seeks damages directly from the United States it is a "well settled principle that the federal government is immune from suit save as it consents to be sued." Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir.1996) (citing FMC Corp. v. United States Department of Commerce, 29 F.3d 833, 839 (3d Cir.1994)). The federal government must consent to be sued and this consent must be narrowly construed in favor of the government. Id. Without a waiver of this immunity, sovereign immunity shields the federal government and its agencies from suit. Matsko v. United States, 372 F.3d 556 (3d. Cir.2004) (citing F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).

Bullock cannot rely upon the general federal question jurisdiction statute, 28 U.S.C. § 1331, to defeat this sovereign immunity. Rather, he must identify a specific statutory provision which waives sovereign immunity. Clinton County Commissioners v. U.S.E.P.A., 116 F.3d 1018, 1021 (3d Cir. 1997). While Bullock suggests that 28 U.S.C. § 1346, which provides jurisdiction for tort suits for money damages, constitutes such a waiver of sovereign immunity, this claim is clearly incorrect. Section 1346 is a limited waiver of sovereign immunity for actions in tort against the United States, but must be read in conjunction with the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, which, by its own terms, does not apply to

15

"[a]ny claim arising in respect of the assessment or collection of any tax[.]" 28 U.S.C. § 2680(c); Lichtman v. United States, 316 Fed. Appx. 116, 120 (3d Cir. 2008). Therefore, this statute does not provide for a claim against this United States in this particular setting. Nor can Bullock rely upon 42 U.S.C. § 1983 as a jurisdictional basis for this claim against the United States since §1983 applies to state actors and does not authorize actions against Federal agents acting under Federal law. Bethea v. Reid, 445 F.2d 1163, 1164 (3d Cir. 1971).

Finally, Bullock's reliance upon 26 U.S.C. § 7433 to sustain this action is entirely misplaced. Section 7433 waives sovereign immunity actions for alleging unauthorized tax collection activities, but prescribes two prerequisites for maintaining an action under this provision. First, Section 7433 requires that the plaintiff must first exhaust his administrative remedies. 26 U.S.C. § 7433(d)(1). This is done by filing an administrative claim with the Area Director in which the taxpayer resides, and the claim must include, *inter alia*, the grounds for the claim, a description of the injuries incurred by the claimant, the dollar amount of the claim, and substantiating documentation. 26 C.F.R. § 301.7433-1(e); Venen v. United States, 38 F.3d 100, 103 (3dCir. 1994). Nothing in plaintiff's voluminous submissions to the Court meets this administrative exhaustion requirement.

Further, Section 7433 only provides for liability:

If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service *recklessly or intentionally, or by reason of negligence,* disregards any provision of this title, or any regulation promulgated under this title, . . . .

26 U.S.C. § 7433(a)(emphasis added).

In this case, however, fairly construed Bullock's voluminous pleadings do not describe reckless, intentional or negligent conduct by IRS officials. Rather, in its present form, Bullock's *pro se* complaint simply recites the plaintiff's views that he is not subject to taxation. The plaintiff's subjective beliefs that wages are not subject to federal income taxes; his opinion that the IRS must show him the law which allows it to collect taxes from him; and his idiosyncratic view that the Internal Revenue Service must comply with the provisions of the Uniform Commercial Code before attempting to collect this tax debt are meritless and certainly do not constitute the type of allegations which warrant a claim under §7433.

### (c).    Bullock is not Entitled to Injunctive Relief

Finally, Bullock is not entitled to injunctive relief in this case, since we are by statute forbidden from issuing injunctions interfering with IRS tax collection activities. The Anti-Injunction Act, 26 U.S.C. §7421, speaks directly to this issue, and provides in clear and precise terms that: "[N]o suit for the purpose of restraining

the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). This clear statutory prohibition against enjoining IRS levies admits of only one narrowly crafted judicial exception. Under the "judicial exception to the Act: [A]n injunction may be obtained against the collection of any tax if (1) it is 'clear that under no circumstances could the government ultimately prevail' and (2) 'equity jurisdiction' otherwise exists, i.e., the taxpayer shows that he would otherwise suffer irreparable injury. Commissioner v. Shapiro, 424 U.S. 614, 627, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976) (quoting Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)). The burden is on the taxpayer to establish both prongs of the test. See Elias, 908 F.2d at 525-26. Unless both prongs of the test are met, a suit for injunctive relief must be dismissed. Alexander v. 'Americans United' Inc., 416 U.S. 752, 758, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974)." Sokolow v. United States, 169 F.3d 663, 665 (9th Cir. 1999). Pursuant to this narrow exception, "Injunctions may issue in *only exceptional and extraordinary circumstances*. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932)." Parenti v. Whinston, 347 F. Supp. 471, 472 (E.D. Pa. 1972)(emphasis added).

In its present form, Bullock's *pro se* complaint does not recite any of the exceptional and extraordinary circumstances which would justify injunctive relief in

the face of the Anti-Injunction Act's broad prohibition against such injunctions. The plaintiff's subjective beliefs regarding our tax laws certainly do not constitute the type of exceptional circumstances contemplated by the Act. Nor can Bullock enjoin this tax levy by simply declaring himself someone who is not a "person" subject to federal income taxes.

More fundamentally, Bullock cannot avail himself of this form of injunctive relief because he cannot show irreparable harm. Bullock cannot show irreparable harm in this instance because he has another legal pathway available to him if he wishes to challenge the imposition of an IRS levy. Title 26, United States Code §6330 specifically provides that persons like Bullock who wish to challenge an IRS levy are entitled to a due process hearing with that agency. 26 U.S.C. §6330(b). At this hearing the taxpayer "may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy." 26 U.S.C. § 6330 (c)(2)(A). If the taxpayer is dissatisfied with the outcome of this agency hearing, that person "may, within 30 days of a determination under this section, appeal such determination to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." 26 U.S.C. § 6330(d)(1). Since §6330 provides this full array of due process protections to a person like Bullock who wishes to contest an IRS levy, the plaintiff simply cannot show the type of irreparable, and irremediable, harm which would warrant intervention by this Court.

In sum, "[h]owever sincerely he may believe them, plaintiff's arguments regarding the government's power to tax are frivolous and merit no further response from the Court..." Bullock v. Bimbo Bakeries USA, Report and Recommendation (ECF No. 24),Case No. 1:09-cv-01902 (M.D. Pa. Feb. 4, 2010), adopted, Order (ECF No 29)(M.D. Pa.Apr. 27, 2010), aff'd, 414 Fed. Appx. 470 (3d Cir. 2011). Therefore, rather than pursuing further frivolous tax litigation, we commend to Bullock's attention the observations of Supreme Court Justice Oliver Wendell Holmes that: "Taxes are what we pay for civilized society." Compania Gen. de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100 (1927).

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the motion to dismiss plaintiff's complaint, (Doc. 19),be GRANTED and Bullock's motion for entry of default, (Doc. 14), be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo

determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of January, 2014.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge